**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| APNEA SCIENCES CORPORATION, a Nevada corporation,<br><br>Plaintiff,<br><br>v.<br><br>FISSIONTECH LLC, a New York limited liability company,<br><br>Defendant. | Case No. 1:25-cv-10328<br><br>**COMPLAINT FOR (1) PATENT INFRINGEMENT; (2) FEDERAL FALSE ADVERTISING [15 U.S.C. § 1125(a)]; AND (3) VIOLATION OF NEW YORK GEN. BUS. LAW**<br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiff Apnea Sciences Corporation ("Plaintiff" or "Apnea"), by its attorneys, hereby alleges as follows against Fissiontech LLC ("Defendant" or "Fissiontech"):

**NATURE OF THE ACTION**

1. This is a claim for direct and indirect patent infringement arising under the patent laws of the United States, 35 U.S. Code Title 35, for infringement of United States Patent No. 8,833,374 (the "'374 Patent"), as well as for false advertising under 15 U.S.C. § 1125(a) and New York Gen. Bus. Law §§ 349 and 350.

2. For more than 16 years, Apnea has been a leader in designing, developing, manufacturing, and distributing sleep-related products that treat common conditions such as snoring and sleep apnea. These products include the SnoreMD®, SnoreRx®, and ApneaRx® devices. Such products are FDA cleared as Class II medical devices. Further, based on Apnea's exemplary safety record, Apnea's SnoreRx device was the first anti-snore device to be reclassified for sale over-the-counter.

3. Apnea has protected its technological innovations through, among other things, patent protection. Apnea owns numerous patents, including the '374 Patent via assignment, which patent was duly and legally issued by the United States Patent and Trademark Office on September 16, 2014. A true and correct copy of the '374 Patent is attached as Exhibit A.

4. As alleged more fully below, Fissiontech has infringed and continues to infringe the '374 Patent by unlawfully and without authorization engaging in, and continuing to engage in, making, using, selling, offering for sale, and/or importing for sale within the United States and in this District products known as the "Difiney" devices (the "Accused Products"), which are advertised as mouthpieces to open the airway and reduce snoring.

5. Further, Fissiontech has made false claims regarding Apnea's sleep-related products.

6. Apnea and Fissiontech are direct competitors and, on information and belief, Apnea has lost substantial business because of Fissiontech's sale of the Accused Products and false advertising.

## THE PARTIES

7. Apnea is a Nevada corporation with its principal place of business at 2518 Anthem Village Drive, Henderson, Nevada, 89052.

8. On information and belief, Fissiontech is a New York limited liability company with its principal place of business at 1 Liberty Street, Floor 3, New York City, New York, 10006.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a). This Court has supplemental jurisdiction over the state law

claim pursuant to 28 U.S.C. § 1367. Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400(b) because Fissiontech (1) has a regular and established place of business, and has committed acts of infringement, in this District, (2) is a New York company and, therefore, resides in New York, and (3) a substantial part of the events giving rise to the claims occurred in this District.

10. This Court has personal jurisdiction over Fissiontech because Fissiontech is a New York company. Further, Fissiontech—directly and/or through intermediaries—has conducted and conducts substantial business within this District including, but not limited to: (i) having its principal place of business in this District; (ii) engaging in at least part of the infringing acts and false advertising alleged herein in this District; (iii) purposefully and voluntarily placing the Accused Products into the stream of commerce with the expectation that they will be purchased and/or used by consumers in this District; and/or (iv) regularly soliciting and/or doing business in this District, and/or engaging in other persistent courses of conduct in this District, and/or or deriving substantial revenue from goods and services provided to individuals in this District.

## FACTUAL BACKGROUND

11. Since its inception in 2009, Apnea has been a leader in innovation in the development and design of sleep-related products that treat common conditions such as snoring and sleep apnea, including its SnoreMD, SnoreRx, and ApneaRx devices. Apnea has demonstrated a commitment to innovation and has marketed its unique sleep-related products across the country.

12. Apnea has protected its technological innovations through various means, including through seeking patent protection. Apnea owns numerous US and international

patents, including the '374 Patent via assignment. The '374 Patent generally describes the design of an "intra-oral mandibular advancement appliance to be inserted in the mouth of a patient," which, among other things, "permit[s] the position of the lower jaw of the patient to be adjusted relative to the upper jaw to maintain an airway to the throat through which the patient can breathe while sleeping, . . . ."

13. Fissiontech has engaged and continues to engage in making, using, selling, offering for sale, and/or importing the Accused Products, known as the "Difiney" "Anti Snoring Device" and "Advanced Anti Snoring Device 4.0," within the United States, the State of New York, and this District, which devices infringe at least claims 1 and 15 of the '374 Patent.

14. On its website, located at www.idifiney.com, Fissiontech advertises the Accused Products directly to consumers, and allows consumers to purchase the Accused Products.

15. To entice consumers to purchase the Accused Products instead of competitors' products, Fissiontech includes the following "comparison chart" on its website, purporting to show how the Accused Products are allegedly superior to the products sold by its competitors, including how the Accused Products are allegedly superior to Apnea's SnoreRx product:

| | Difiney | ZQuiet | SnoreRx | Zyppah | Pure Sleep |
|---|---|---|---|---|---|
| Ergonomic Oral Fit Design | ✓ | ✗ | ✗ | ✗ | ✗ |
| Tailored Custom Fit | ✓ | ✗ | ✓ | ✓ | ✓ |
| Precision Adjustment in 1mm Increments | ✓ | ✗ | ✓ | ✗ | ✗ |
| Built-in Calibrator | ✓ | ✗ | ✓ | ✓ | ✓ |
| Slim, Lightweight Comfort | ✓ | ✓ | ✗ | ✗ | ✗ |
| Risk-Free 90-Night Trial | ✓ | ✗ | ✗ | ✓ | ✗ |

16.     Fissiontech also sells the Accused Products directly to consumers through Amazon. To entice Amazon consumers to purchase the Accused Products instead of competitors' products, Fissiontech includes the following "comparison chart" on Amazon, purporting to show how the Difiney Device 4.0 is allegedly superior to the products sold by "others":



17.     These comparison charts (the "Comparison Charts"), at least as they pertain to Apnea, are false. The SnoreRx product includes an ergonomic oral fit design and features slim, lightweight comfort. Further, the SnoreRx product, as well as other Apnea products (including its SnoreMD product) feature a customized fit, are adjustable in 1mm increments, and are protected by patents.

18.     When Fissiontech applied to the FDA for 510(k) clearance on its original "Difiney Anti Snoring Device," it was aware of Apnea and its SnoreRx product and, in fact, Fissiontech cited Apnea's SnoreRX to the FDA, identifying the SnoreRx as a "predicate device." In doing

so, Fissiontech admitted, among other things, that the features, uses, materials, desirable characteristics, and specifications, among other things, between its product and the SnoreRx product were either the same or similar. Based thereon, the FDA found that "the Difiney Anti Snoring Device is substantially equivalent to the predicate SnoreRx . . . ." Exhibit C. Thus, while Fissiontech now claims that its products are superior to Apnea's products, it told the FDA that its products were substantially equivalent to Apnea's SnoreRx product.

## COUNT I – DIRECT INFRINGEMENT OF THE '374 PATENT

19. Apnea incorporates by reference and re-alleges all of the foregoing paragraphs of this Complaint as if fully set forth herein.

20. Defendant has engaged and continues to engage in making, using, selling, offering for sale, and/or importing for sale the Accused Products.

21. As described in more detail in the claim chart attached as Exhibit B, the Accused Products infringe at least claims 1 and 15 of the '374 Patent.

22. As alleged in Exhibit B, each limitation of claim 1 of the '374 Patent is literally met, other than the following limitation, which is met by the doctrine of equivalents: "said lower tray assembly being responsive to a lateral compressive squeezing force simultaneously applied to the opposite sides thereof to temporarily change the shape of and deform said lower tray assembly to enable each position adjustment block to slide through its respective locking channel so as to release the locking engagement of said lower tray assembly to said upper tray assembly and thereby permit the positions of said lower tray assembly and the patient's lower jaw to be adjusted relative to the positions of said upper tray assembly and the patient's upper jaw." In the Accused Products, it is the upper tray assembly, rather than the lower tray assembly, that is responsive to the lateral compressive squeezing force.

23. This change in the Accused Products is insubstantial, and interchanging the top tray with the bottom tray in this way was known at the time of infringement. For instance, certain of Apnea's products that are publicly sold operate by having the compressive force applied to the upper tray, rather than the lower tray, just as is done in the Accused Products.

24. Further, the Accused Products meet the "lower tray" limitation of claim 1 under the doctrine of equivalents because they perform substantially the same function (allowing a patient's lower jaw to be adjusted relative to the upper jaw), in substantially the same way (through a lateral compressive squeezing force that changes the shape of one of the tray assemblies, thereby allowing the teeth along the position control blocks to move out of their locking engagement with the teeth along the locking channels), to achieve substantially the same result (reducing snoring and/or sleep apnea).

25. As alleged in Exhibit B, each limitation of claim 15 of the '374 Patent also is literally met, other than the following limitation, which is met by the doctrine of equivalents: "said lower tray assembly being responsive to a lateral compressive squeezing force applied thereto to correspondingly change the shape of and deform said lower tray assembly and thereby enable the first and complementary sets of teeth of said position adjustment block and said locking channel to be released from their interlocking engagement with one another so as to permit said upstanding position adjustment block to slide through said recessed locking channel whereby the positions of said lower tray assembly and the patient's lower jaw are correspondingly adjusted relative to the positions of said upper tray assembly and the patient's upper jaw." In the Accused Products, it is the <u>upper</u> tray assembly, rather than the <u>lower</u> tray assembly, that is responsive to the lateral compressive squeezing force.

26. This change in the Accused Products is insubstantial, and interchanging the top tray with the bottom tray in this way was known at the time of infringement. For instance, certain of Apnea's products that are publicly sold operate by having the compressive force applied to the upper tray, rather than the lower tray, just as is done in the Accused Products.

27. Further the Accused Products meet this "lower tray" limitation of claim 15 under the doctrine of equivalents because they perform substantially the same function (allowing a patient's lower jaw to be adjusted relative to the upper jaw), in substantially the same way (through a lateral compressive squeezing force that changes the shape of one of the tray assemblies, thereby allowing the teeth along the position control blocks to move out of their locking engagement with the teeth along the locking channels), to achieve substantially the same result (reducing snoring and/or sleep apnea).

28. This application of the doctrine of equivalents is not barred by prosecution history estoppel.

29. Due to Defendant's infringement, Apnea has suffered injury and monetary damages for which Apnea is entitled to relief in the form of damages for lost profits, but in no event less than a reasonable royalty.

30. Defendant will continue to infringe at least claims 1 and 15 of the '374 Patent, causing immediate and irreparable harm to Apnea, unless this Court enjoins and restrains its activities, specifically the acts of making, using, selling, offering for sale, and importing for sale the Accused Products. There are inadequate remedies available at law to compensate for this harm because the parties are direct competitors and, thus, Apnea not only is suffering lost sales but also is suffering a loss of goodwill. Indeed, Apnea's products are widely-recognized for their

high quality, and the reputation Apnea has spent decades building is being diluted by "knock-off" products, such as those sold by Defendant.

31. Defendant was aware of the '374 Patent at least as of the date it was served with this Complaint and, information and belief, had knowledge of the '374 Patent before it introduced the Accused Products based on its 510(k) submission to the FDA. Moreover, Defendant has had constructive knowledge of the '374 Patent because Apnea has marked products with that patent since no later 2015. Upon information and belief, Defendant has knowingly, willfully, and deliberately infringed at least claims 1 and 15 of the '374 Patent in conscious disregard of Apnea's rights, making this case exceptional within the meaning of 35 U.S.C. § 285 and justifying treble damages pursuant to 35 U.S.C. § 284.

### COUNT II – INDIRECT INFRINGEMENT OF THE '374 PATENT

32. Apnea incorporates by reference and re-alleges all of the foregoing paragraphs of this Complaint as if fully set forth herein.

33. As alleged herein, Defendant has directly infringed at least claims 1 and 15 of the '374 Patent.

34. Defendant was aware of the '374 Patent at least as of the date it was served with this Complaint and, information and belief, had knowledge of the '374 Patent before it introduced the Accused Products based on its 510(k) submission to the FDA. Moreover, Defendant has had constructive knowledge of the '374 Patent because Apnea has marked its product with that patent since no later than 2015.

35. On information and belief, Defendant indirectly infringes the '374 Patent pursuant to 35 U.S.C. § 271(b) by knowingly and intentionally inducing the infringement of the '374 Patent by selling the Accused Products to direct infringers that include, without limitation,

resellers that sell, offer for sale, and/or import for sale the Accused Products and distributors of the Accused Products that sell, offer for sale, and/or import for sale the Accused Products.

36. Due to Defendant's indirect infringement, Apnea has suffered injury and monetary damages for which Apnea is entitled to relief in the form of damages for lost profits, but in no event less than a reasonable royalty. Upon information and belief, Defendant has knowingly, willfully, and deliberately indirectly infringed at least claims 1 and 15 of the '374 Patent in conscious disregard of Apnea's rights, making this case exceptional within the meaning of 35 U.S.C. § 285 and justifying treble damages pursuant to 35 U.S.C. § 284.

37. Defendant will continue to indirectly infringe at least claims 1 and 15 of the '374 Patent, causing immediate and irreparable harm to Apnea unless this Court enjoins and restrains its activities, specifically the acts of making, using, selling, offering for sale, and importing for sale the Accused Products. There are inadequate remedies available at law to compensate for this harm because the parties are direct competitors and, thus, Apnea not only is suffering lost sales but also is suffering a loss of goodwill. Indeed, Apnea's products are widely-recognized for their high quality, and the reputation Apnea has spent decades building is being diluted by "knock-off" products, such as those sold by Defendant.

## COUNT III – FEDERAL FALSE ADVERTISING

38. Apnea incorporates by reference and re-alleges all of the foregoing paragraphs of this Complaint as if fully set forth herein.

39. On information and belief, consumers who view the Amazon chart are likely to believe that one of the "others" being referred to are Apnea's products because, among other reasons, Defendant makes a direct comparison on its website to the SnoreRx product.

40. The Comparison Charts, at least as they pertain to Apnea, are literally false or, in

the alternative, are misleading by implication. The SnoreRx product includes an ergonomic oral fit design and features slim, lightweight comfort. The SnoreRx product is not bulkier than the Accused Products. Indeed, each of the Accused Products, as well as the SnoreRx product, weigh about the same. Further, Apnea's products feature a customized fit, are adjustable in 1mm increments, and are protected by patents.

41. Upon information and belief, the false statements in the Comparison Charts are material because those statements have deceived, or have the tendency to deceive, the purchasing decisions of a substantial portion of consumers looking to purchase a sleep-related product. Indeed, the only reason Defendant would include the Comparison Charts on its website and on Amazon, as it has done, is to influence purchasing decisions.

42. Upon information and belief, Apnea has been harmed by Defendant's deception in that sales have been diverted from Apnea to Defendant. Apnea therefore is entitled, under 15 U.S.C. § 1117, to recover Defendant's profits that were obtained due to the false advertising.

43. Upon information and belief, Defendant's false advertising was intentional, malicious, willful, and wanton, therefore entitling Apnea to three times the amount of Defendant's profits.

44. Defendant's conduct renders this case exceptional, thereby entitling Apnea to recover its reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

45. Defendant will continue to engage in false advertising, causing immediate and irreparable harm to Apnea unless this Court enjoins and restrains its activities. There are inadequate remedies available at law to compensate for this harm because the parties are direct competitors and, thus, Apnea not only is suffering lost sales but also is suffering a loss of goodwill. Indeed, Apnea's products are widely-recognized for their high quality, and the

reputation Apnea has spent decades building is being diluted by "knock-off" products, such as those sold by Defendant.

**COUNT IV – VIOLATION OF NEW YORK GBL §§ 349 AND 350**

46. Apnea incorporates by reference and re-alleges all of the foregoing paragraphs of this Complaint as if fully set forth herein.

47. N.Y. Gen. Bus. Law § 349(a) makes unlawful deceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in New York State. Defendant engages in business, trade, or commerce, or in the furnishing of service in New York and, by publishing the Comparison Charts on its website and on Amazon, Defendant violated N.Y. Gen. Bus. Law § 349, which constitutes an unfair, misleading, deceptive, and/or unlawful act and practice.

48. Defendant's conduct complained of herein also constitutes a violation of GBL § 350, which declares unlawful "[f]alse advertising in the conduct of any business, trade or commerce." The Comparison Charts, as alleged herein, are "false advertising" under GBL § 350-a.

49. Upon information and belief, Defendant knew or should have known that its false statements were misleading and likely to deceive and mislead New York consumers. Specifically, New York consumers are likely falsely to believe, as set forth in the Comparison Charts, that (1) Apnea's SnoreRx product lacks an ergonomical oral fit design, (2) the Accused Products are lighter than Apnea's SnoreRx product, (3) Apnea's products lack a customized fit, (4) Apnea's products are not adjustable in 1mm increments, and/or (5) Apnea's products are not protected by patents.

50. Upon information and belief, Apnea has been harmed by Defendant's deception in

that sales have been diverted from Apnea to Defendant, thereby entitled Apnea to actual damages, treble damages, and attorneys' fees. Apnea also is entitled to statutory damages of $50 per violation under § 349 and $500 per violation under § 350.

51. Defendant will continue to engage in false advertising, causing immediate and irreparable harm to Apnea unless this Court enjoins and restrains its activities. There are inadequate remedies available at law to compensate for this harm because the parties are direct competitors and, thus, Apnea not only is suffering lost sales but also is suffering a loss of goodwill. Indeed, Apnea's products are widely-recognized for their high quality, and the reputation Apnea has spent decades building is being diluted by "knock-off" products, such as those sold by Defendant.

## PRAYER OF RELIEF

WHEREFORE, Apnea prays for judgment as follows:

A. For Judgment in favor of Apnea because Defendant has directly and indirectly infringed one or more claims of the '374 Patent;

B. That, in accordance with 35 U.S.C. § 283, Defendant, and all its affiliates, employees, agents, officers, directors, attorneys, successors, and assigns and all those acting on behalf of or in active concert or participation with any of them, be preliminarily and permanently enjoined from making, using, selling, offering for sale, and importing for sale the Accused Products and prohibited from engaging in false advertising;

C. An award of damages sufficient to compensate Apnea for Defendant's infringement under 35 U.S.C. § 284, including but not limited to, damages for lost profits, but in no event less than a reasonable royalty, together with interest and costs, including an enhancement of damages on account of Defendant's willful infringement;

D. An award of Defendant's profits that were obtained due to the false advertising under 15 U.S.C. § 1117, which profits should be trebled;

E. That the case be found exceptional under 35 U.S.C. § 285 and/or 15 U.S.C. § 1117 and that Apnea be awarded its reasonable attorneys' fees;

F. Apnea's actual damages;

G. Statutory damages under New York law;

H. Costs and expenses in this action;

I. An award of prejudgment and post-judgment interest; and

J. Such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Apnea hereby demands a trial by jury on all claims and issues so triable.

Respectfully submitted,

Dated: December 12, 2025

**UMBERG ZIPSER LLP**

By: /s/*Amy Lesperance*
Amy Lesperance
Mark A. Finkelstein
(*pro hac vice* forthcoming)
Molly J. Magnuson
(*pro hac vice* forthcoming)
1920 Main Street, Suite 750
Irvine, CA 92614
Telephone: (949) 679-0052
Email: alesperance@uzllp.com

*Counsel for Plaintiff Apnea Sciences Corporation*