UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

APNEA SCIENCES CORPORATION,

                   Plaintiff,

    -against-

FISSIONTECH LLC,

                   Defendant.

Case No. 1:25-cv-10328 (JLR)

**<u>OPINION AND ORDER</u>**

JENNIFER L. ROCHON, United States District Judge:

Defendant Fissiontech LLC ("Fissiontech" or "Defendant") moves pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) to dismiss Counts I and II of Plaintiff Apnea Sciences Corporation's ("Apnea" or "Plaintiff") complaint. Dkt. 24 ("Mot."). Count I asserts direct infringement of U.S. Patent No. 8,833,374 (the "Asserted Patent"). Dkt. 7 (the "Complaint" or "Compl.") ¶¶ 19-31. Count II asserts indirect infringement of the same. *Id.* ¶¶ 32-37. Counts III and IV, which consist of a federal and New York state false advertising claim, respectively, *id.* ¶¶ 38-51, are not subject to the motion.

For the reasons that follow, Fissiontech's motion is GRANTED.

## BACKGROUND

### I.    Factual Allegations

The following facts are drawn from the Complaint and taken as true for purposes of this motion. *See Costin v. Glens Falls Hosp.*, 103 F.4th 946, 952 (2d Cir. 2024).

### A.    The Parties and the Asserted Patent

Apnea sells oral appliances used to treat snoring and sleep-related breathing conditions. Compl. ¶¶ 2, 11. It owns, via assignment, the Asserted Patent, which generally describes an "intra-oral mandibular advancement appliance" that allows the position of a patient's lower jaw

"to be adjusted relative to the upper jaw" to help maintain an airway while sleeping.  *Id.* ¶¶ 3, 12. The Asserted Patent issued on September 16, 2014.  *Id.* ¶ 3.

Fissiontech makes and sells products known as the "Difiney Anti Snoring Device" and "Difiney Advanced Anti Snoring Device 4.0" (together, the "Accused Products").  *Id.* ¶¶ 4, 13. Apnea alleges that the Accused Products infringe claims 1 and 15 of the Asserted Patent.  *Id.* ¶¶ 13, 21.

Apnea does not allege literal infringement as to every claim limitation.  Instead, Apnea alleges that each limitation of claim 1 is met except the limitation requiring that the "lower tray assembly be[] responsive to a lateral compressive squeezing force."  *Id.* ¶ 22.  According to the Complaint, "[i]n the Accused Products, it is the upper tray assembly, rather than the lower tray assembly, that is responsive to the lateral compressive squeezing force."  *Id.*  Apnea makes materially similar allegations for claim 15.  *Id.* ¶ 25.  Apnea alleges that the difference between the upper and lower tray assembly is insubstantial, *id.* ¶¶ 23, 26, and that the Accused Products meet the limitation "under the doctrine of equivalents because they perform substantially the same function . . . , in substantially the same way . . . , to achieve substantially the same result," *id.* ¶¶ 24, 27.  Apnea further alleges that prosecution history estoppel does not bar its doctrine-of-equivalents theory.  *Id.* ¶ 28.

In addition to its direct infringement claim, Apnea pleads a dependent indirect infringement claim.  The indirect infringement claim incorporates the direct infringement allegations and alleges that Fissiontech knowingly and intentionally induced infringement by selling the Accused Products to direct infringers, including resellers and distributors.  *Id.* ¶¶ 32-35.

B.      **Prosecution of the Asserted Patent**[1]

The Asserted Patent issued from U.S. Patent Application No. 13/199,383 (the "Application"). *See* Dkt. 7-1 ("'374 Patent") at 2; *see also* Dkt. 26-1 ("'383 Application"). Relevant here, the Application originally included independent claims 1 and 16. '383 Application at 20, 24-25. Original claim 1 covered, among other things, an upper tray assembly and a lower tray assembly, with the "lower tray assembly being responsive to a compressive force applied thereto to temporarily change the shape thereof" and adjust the patient's lower jaw relative to the upper jaw. *Id.* at 20 (emphasis added). Original claim 16 was broader. It covered "the one of said upper and lower tray assemblies being responsive to a force applied thereto" to release "interlocking engagement" and permit adjustment. *Id.* at 25 (emphasis added). Thus, original claim 16 did not limit the force-responsive tray to the lower tray; it covered force applied to either one of the upper and lower tray assemblies.

The Examiner for the United States Patent and Trademark Office ("PTO") rejected the original claims as anticipated by U.S. Patent Application Publication No. 2011/0017220 ("Lindsay"). Dkt. 26-2 ("PTO Action") at 4. In doing so, the Examiner found that Lindsay disclosed upper and lower trays responsive to a force, specifically pressure applied by biting the upper and lower trays. *Id.* at 5 ("Lindsay discloses the user may manipulate the device . . . by biting the upper & lower trays, the application of biting on the trays temporarily changes the shape thereof, . . . thereby allowing movement of trays." (citations omitted)).

---

[1] "[T]he Court may take judicial notice of official records of the United States Patent and Trademark Office (PTO)." *Kaplan, Inc. v. Yun*, 16 F. Supp. 3d 341, 345 (S.D.N.Y. 2014); *see also Anchor Sales & Mktg., Inc. v. Richloom Fabrics Grp., Inc.*, No. 15-cv-04442 (RA), 2016 WL 4224069, at *2 n.1 (S.D.N.Y. Aug. 9, 2016) ("Because Plaintiff agrees that the [prosecution history] documents attached to the Diebner Declaration are true copies of documents filed with the PTO, the Court will take judicial notice of them and consider them without converting Defendant's motion to dismiss into one for summary judgment." (citation modified)).

Apnea amended the claims in response to the Examiner's comments.  *See* Dkt. 26-3 ("Amendment").  As amended, claim 1 recited "said lower tray assembly being responsive to a lateral compressive squeezing force simultaneously applied to the opposite sides thereof to temporarily change the shape of and deform said lower tray assembly."  *Id.* at 4 (emphasis added).  Claim 16 was similarly amended to recite "said lower tray assembly being responsive to lateral compressive squeezing forces applied thereto to correspondingly change the shape of and temporarily deform said lower tray assembly."  *Id.* at 9 (emphasis added).

In remarks accompanying the amendments, Apnea distinguished Lindsay.  Apnea stated that its "claimed mandibular advancement appliance is responsive to a lateral compressive squeezing force simultaneously applied to the opposite sides thereof in order to temporarily change the shape of and deform a lower tray assembly before the position of the lower tray assembly can be adjusted relative to the position of an upper tray assembly."  *Id.* at 14.  Apnea contrasted Lindsay as being "responsive to biting (i.e., up and down) forces in order to enable a position adjustment."  *Id.*  Apnea further stated that Lindsay did not show or suggest "a lower tray assembly" that would "temporarily change its shape and experience deformation in response to squeezing forces applied to opposite sides thereof," in the manner recited by amended claims 1 and 16.  *Id.* ("[T]here is nothing to indicate that a lower tray assembly of the repositioning device of Lindsay, et al. undergoes a change of shape[.]"); *see also id.* at 16 ("In other words, despite being subjected to up and down biting forces, the shape of the mandibular repositioning device taught by Lindsay, et al. remains constant and does not appear to undergo a deformation before rails and grooves thereof are able to move out of their frictional interlocking engagement.").

After the amendments and remarks, the Examiner withdrew the Lindsay anticipation rejection of claims 1 and 16. Dkt. 26-4 ("Detailed Action") at 4 ("The Lindsay reference . . . has been withdrawn in view of applicant's amendment. In particular, Lindsay . . . does not teach the lower tray assembly being responsive to a lateral compressive squeezing force . . . to temporarily change the shape of and deform the lower tray assembly[.]"). Claims 1 and 16 of the Application ultimately issued as claims 1 and 15 of the Asserted Patent, respectively. Dkt. 26-5 ("Notice of Allowance") at 7; *id.* at 9 (describing "[a]llowable [s]ubject [m]atter" as "an intra-oral mandibular advancement appliance comprising a lower tray assembly in being responsive to a lateral compressive squeezing force simultaneously applied to the opposite sides thereof to temporarily change the shape of and deform the lower tray assembly so as to release the locking engagement"); *see generally* '374 Patent. The relevant language is excerpted below:

| Claim 1 ('383 Application) | Claim 1 ('374 Patent) |
|---|---|
| . . . said lower tray assembly being responsive to a compressive force applied thereto to temporarily change the shape thereof so as to release the locking engagement of said lower tray assembly to said upper tray assembly and thereby permit the positions of said lower tray assembly and the patient's lower jaw to be adjusted relative to the positions of said upper tray assembly and the patient's upper jaw. | . . . said lower tray assembly being responsive to a lateral compressive squeezing force simultaneously applied to the opposite sides thereof to temporarily change the shape of and deform said lower tray assembly to enable each position adjustment block to slide through its respective locking channel so as to release the locking engagement of said lower tray assembly to said upper tray assembly and thereby permit the positions of said lower tray assembly and the patient's lower jaw to be adjusted relative to the positions of said upper tray assembly and the patient's upper jaw. |

| Claim 16 ('383 Application) | Claim 15 ('374 Patent) |
|---|---|
| . . . the one of said upper and lower tray assemblies being responsive to a force applied thereto to cause the opposing locking elements of said position adjustment block and said locking channel to be released from their interlocking engagement with one another so as to permit said position adjustment block to slide through said locking channel whereby the positions of said lower tray assembly and the patient's lower jaw are correspondingly adjusted relative to the positions of said upper tray assembly and the patient's upper jaw. | . . . said lower tray assembly being responsive to a lateral compressive squeezing force applied thereto to correspondingly change the shape of and deform said lower tray assembly and thereby enable the first and complementary sets of teeth of said position adjustment block and said locking channel to be released from their interlocking engagement with one another so as to permit said upstanding position adjustment block to slide through said recessed locking channel whereby the positions of said lower tray assembly and the patient's lower jaw are correspondingly adjusted relative to the positions of said upper tray assembly and the patient's upper jaw. |

## II.    Procedural History

On February 26, 2026, Fissiontech moved to dismiss Counts I and II of the Complaint. Mot.; Dkt. 25 ("Br."); Dkt. 26 ("Boeshore Decl."). Apnea filed its opposition brief on March 12, 2026, see Dkt. 27 (the "Opposition" or "Opp."); Dkt. 28 ("Finkelstein Decl."), and Fissiontech replied on March 19, 2026, see Dkt. 29 ("Reply"). The issue is thus fully briefed. On June 1, 2026, the parties appeared before the Court for oral argument on the motion. See Dkt. 41; see also June 1, 2026 Transcript ("Tr.").

## LEGAL STANDARD

## I.    Motion to Dismiss

"[T]o determine whether a patent pleading survives a Rule 12(b)(6) motion to dismiss, courts in this Circuit apply Second Circuit law and follow the pleading standard set out in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)." *Araujo v. E. Mishan & Sons, Inc.*, No. 19-cv-05785 (GHW) (SN), 2020 WL 5371323,

at \*2 (S.D.N.Y. Aug. 7, 2020), *report and recommendation adopted*, 2020 WL 5369888 (S.D.N.Y. Sept. 8, 2020); *see also McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1355-56 (Fed. Cir. 2007) ("A motion to dismiss for failure to state a claim upon which relief can be granted is a purely procedural question not pertaining to patent law.  Thus, on review we apply the law of the regional circuit.").  Under this standard, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 72 (2d Cir. 2021) (en banc) (quoting *Iqbal*, 556 U.S. at 678).  The Court "accept[s] all factual allegations as true, and draw[s] all reasonable inferences in the plaintiff's favor." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110-11 (2d Cir. 2010) (quoting *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009)).  However, a complaint must allege "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

## II.    Doctrine of Equivalents and Prosecution History Estoppel

"On substantive questions of patent law, this Court is bound by the precedents of the U.S. Court of Appeals for the Federal Circuit." *PowX Inc. v. Performance Sols., LLC*, No. 24-cv-01389 (MMG), 2024 WL 3010040, at \*6 (S.D.N.Y. June 14, 2024), *appeal dismissed*, 2025 WL 401209 (Fed. Cir. Feb. 5, 2025); *see also Hybritech Inc. v. Abbott Lab'ys*, 849 F.2d 1446, 1451 n.12 (Fed. Cir. 1988) ("[S]ubstantive matters unique to patent law [are] governed by the law of this court.").  "There are two types of infringement: literal infringement, which is not at issue here, and infringement under the doctrine of equivalents." *Pozen Inc. v. Par Pharm., Inc.*, 696 F.3d 1151, 1167 (Fed. Cir. 2012).  "To prove an accused product literally infringes the patent in suit, the product must contain each and every limitation of the asserted claim(s)." *Trebro Mfg., Inc. v. Firefly Equip., LLC*, 748 F.3d 1159, 1166 (Fed. Cir. 2014).  But, "[u]nder the doctrine of equivalents, 'a product . . . that does not literally infringe upon the express terms of a patent

7

claim may nonetheless be found to infringe if there is "equivalence" between the elements of the accused product . . . and the claimed elements of the patented invention.'" *DePuy Spine, Inc. v. Medtronic Sofamore Danek, Inc.*, 469 F.3d 1005, 1016 (Fed. Cir. 2006) (quoting *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997)).  "[E]quivalence [must] be assessed on a limitation-by-limitation basis, rather than from the perspective of the invention as a whole, and . . . no limitation [may] be read completely out of the claim."  *Id.* at 1017.  The "essential inquiry" is "whether an element of an accused product 'performs substantially the same function in substantially the same way to obtain the same result' as an element of the patented invention."  *Cephalon, Inc. v. Watson Pharms., Inc.*, 707 F.3d 1330, 1340 (Fed. Cir. 2013) (first quoting *Warner-Jenkinson Co.*, 520 U.S. at 40; and then quoting *TIP Sys., LLC v. Phillips & Brooks/Gladwin, Inc.*, 529 F.3d 1364, 1376 (Fed. Cir. 2008)).  In effect, the doctrine "allows the patentee to claim those insubstantial alterations that were not captured in drafting the original patent claim but which could be created through trivial changes."  *Pozen Inc.*, 696 F.3d at 1167 (quoting *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 733 (2002)).

"However, prosecution history estoppel limits the broad application of the doctrine of equivalents by barring an equivalents argument for subject matter relinquished when a patent claim is narrowed during prosecution."  *Conoco, Inc. v. Energy & Env't Int'l, L.C.*, 460 F.3d 1349, 1363 (Fed. Cir. 2006); *see also Festo Corp.*, 535 U.S. at 733 ("Prosecution history estoppel requires that the claims of a patent be interpreted in light of the proceedings in the PTO during the application process.").  It "applies when an applicant during patent prosecution narrows a claim 'to avoid the prior art, or otherwise to address a specific concern . . . that arguably would have rendered the claimed subject matter unpatentable.'"  *EMD Millipore Corp. v. AllPure Techs., Inc.*, 768 F.3d 1196, 1203 (Fed. Cir. 2014) (omission in original) (quoting

8

*Warner-Jenkinson Co.*, 520 U.S. at 30-31).  Estoppel therefore "prevents a patent owner from recapturing through the doctrine of equivalents subject matter surrendered to acquire the patent." *Duramed Pharms., Inc. v. Paddock Lab'ys, Inc.*, 644 F.3d 1376, 1380 (Fed. Cir. 2011).

"[P]rosecution history estoppel can occur during prosecution in one of two ways, either (1) by making a narrowing amendment to the claim ('amendment-based estoppel') or (2) by surrendering claim scope through argument to the patent examiner ('argument-based estoppel')." *Conoco, Inc.*, 460 F.3d at 1363 (quoting *Deering Precision Instruments, LLC v. Vector Distrib. Sys., Inc.*, 347 F.3d 1314, 1324 (Fed. Cir. 2003)).  "With respect to amendment-based prosecution history estoppel, the Supreme Court has recognized that a 'patentee's decision to narrow his claims through amendment may be presumed to be a general disclaimer of the territory between the original claim and the amended claim.'"  *Pharma Tech Sols., Inc. v. LifeScan, Inc.*, 942 F.3d 1372, 1380 (Fed. Cir. 2019) (quoting *Festo Corp.*, 535 U.S. at 740); *see also Actelion Pharms. Ltd v. Mylan Pharms. Inc.*, --- F.4th ---, 2026 WL 1314700, at *7 (Fed. Cir. May 13, 2026) ("Such 'a narrowing amendment made for a reason of patentability' presumptively 'surrenders the entire territory between the original claim limitation and the amended claim limitation.'" (quoting *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359, 1365 (Fed. Cir. 2003))).

The presumption of surrender may be overcome where "the amendment cannot reasonably be viewed as surrendering a particular equivalent," including where "the rationale underlying the amendment bears but a tangential relation to the equivalent in question." *Festo*, 535 U.S. at 740.  "The tangential relation inquiry 'focuses on the patentee's objectively apparent reason for the narrowing amendment,' which 'should be discernible from the prosecution history record.'" *Integrated Tech. Corp. v. Rudolph Techs., Inc.*, 734 F.3d 1352, 1358 (Fed. Cir. 2013) (quoting *Festo Corp.*, 344 F.3d at 1369).  "If the prosecution history reveals no reason for the

9

narrowing amendment, the presumption is not rebutted." *Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.*, 523 F.3d 1304, 1315 (Fed. Cir. 2008); *accord Festo Corp.*, 344 F.3d at 1371-72; *see also EMD Millipore Corp.*, 768 F.3d at 1204 ("[T]he Supreme Court has stated '[w]here no explanation is established . . . the court should presume that the patent applicant had a substantial reason related to patentability for including the limiting element added by amendment.'" (second and third alteration in original) (quoting *Warner-Jenkinson Co.*, 520 U.S. at 33)).  The tangential relation exception is "very narrow," and the patentee bears the burden of establishing it.  *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 480 F.3d 1335, 1341-42 (Fed. Cir. 2007); *see also Paone v. Microsoft Corp.*, 881 F. Supp. 2d 386, 424 (E.D.N.Y. 2012) ("It is a rare case in which the presumption is rebutted.").

Prosecution history estoppel may also arise from arguments made to the PTO.  *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1350 (Fed. Cir. 2002) ("An estoppel also may be found on the basis of arguments made during prosecution of the application to secure the allowance of claims."); *see also Eagle Comtronics, Inc. v. Arrow Commc'n Lab'ys, Inc.*, 305 F.3d 1303, 1316 (Fed. Cir. 2002) ("Clear assertions made during prosecution in support of patentability, whether or not actually required to secure allowance of the claim, may also create an estoppel." (quoting *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1583 (Fed. Cir. 1995))).  "To invoke argument-based estoppel, the prosecution history must evince a 'clear and unmistakable surrender of subject matter.'" *Eagle Comtronics, Inc.*, 305 F.3d at 1316 (quoting *Pharmacia & Upjohn Co. v. Mylan Pharms., Inc.*, 170 F.3d 1373, 1377 (Fed. Cir. 1999)); *see also Conoco, Inc.*, 460 F.3d at 1364 ("Though arguments to the examiner may have the same effect, they do not always evidence the same clear disavowal of scope that a formal amendment to the claim would have.").  "The relevant inquiry is whether a competitor would reasonably

believe that the applicant had surrendered the relevant subject matter." *Conoco, Inc.*, 460 F.3d at 1364 (quoting *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1457 (Fed. Cir. 1998)).

Regardless of the basis invoked, "[w]hether prosecution history estoppel applies, and thus whether the doctrine of equivalents is available for a particular claim limitation, is a question of law," *Spectrum Pharms., Inc. v. Sandoz Inc.*, 802 F.3d 1326, 1337 (Fed. Cir. 2015), and "may be determined on a motion to dismiss," *Jenny Yoo Collection, Inc. v. Watters Design Inc.*, No. 16-cv-02205 (VSB), 2017 WL 4997838, at *9 (S.D.N.Y. Oct. 20, 2017).

## DISCUSSION

Fissiontech argues that Apnea's doctrine-of-equivalents theory is barred by amendment-based and argument-based prosecution history estoppel.  Br. at 1, 11-16.  Apnea responds that the relevant prosecution amendment was directed to distinguishing a prior-art device that operated through biting, or up-and-down force, and that any distinction between upper-tray and lower tray responsiveness was merely tangential.  Opp. at 8-12.  The Court addresses each of Fissiontech's arguments in turn.

### I.    Amendment-Based Prosecution History Estoppel Bars Apnea's Doctrine-of-Equivalents Theory

The Court agrees that amendment-based estoppel bars Count I of the Complaint.  During prosecution, the Examiner rejected original claims 1 and 16 as anticipated by Lindsay.  PTO Action at 4.  Apnea then amended the claims to cover a lower tray assembly responsive to lateral compressive squeezing force.  Amendment at 4, 9.  Those amendments narrowed the claims in two ways.  First, the amendments narrowed the required force from a general force to a lateral

11

compressive squeezing force. Second, with respect to original claim 16, the amendments also narrowed the relevant force-responsive component to the lower tray assembly.[2]

The narrowing of claim 16 is dispositive. Original claim 16 recited "the one of said upper and lower tray assemblies being responsive to a force applied thereto." '383 Application at 25 (emphasis added). The amended claim recited "said lower tray assembly being responsive to lateral compressive squeezing forces." Amendment at 9 (emphasis added). The amended language thus removed from the claim scope a device in which the upper tray assembly is the force-responsive component. Claim 15 of the Asserted Patent reflects that narrowing. See '374 Patent at 15.

Apnea's infringement theory seeks to recover precisely that removed subject matter. See Hoganas AB v. Dresser Indus., Inc., 9 F.3d 948, 951-52 (Fed. Cir. 1993) ("The essence of prosecution history estoppel is that a patentee should not be able to obtain, through the doctrine of equivalents, coverage of subject matter that was relinquished during prosecution to procure issuance of the patent."); accord Integrated Tech. Corp., 734 F.3d at 1356. The Complaint alleges that, in the Accused Products, "the upper tray assembly, rather than the lower tray assembly, . . . is responsive to the lateral compressive squeezing force." Compl. ¶¶ 22, 25. That alleged equivalent is not peripheral to the amendments — it is directly covered by them.

Apnea does not dispute that the amendments were made after the Lindsay-based rejection and for purposes of obtaining allowance. See Opp. at 9. Because the amendments narrowed the claims for reasons substantially related to patentability, a presumption of prosecution history estoppel applies. See Primos, Inc. v. Hunter's Specialties, Inc., 451 F.3d 841, 849 (Fed. Cir. 2006) ("[W]hen a patent claim is amended during prosecution for reasons relating to

---

[2] Original claim 1 already limited the force-responsive component to the lower tray assembly. '383 Application at 20.

patentability, there is a presumption that the patentee surrendered all the territory between the original claim limitation and the amended claim limitation."); *Integrated Tech. Corp.*, 734 F.3d at 1357-58 ("[P]rosecution history estoppel presumptively applies because the amendment narrowed the scope of the original claim in response to patentability rejections."). Apnea bears the burden of overcoming that presumption. *Integrated Tech. Corp.*, 734 F.3d at 1356. As explained below, it has not done so.

### A.    The Tangential-Relation Exception Does Not Apply

Apnea's sole response to the presumptive application of prosecution history estoppel is that the rationale for the amendments was to distinguish Lindsay's biting-force mechanism, and that the upper tray/lower tray distinction was merely tangential. Opp. at 8-12. An examination of the prosecution history shows otherwise.

The tangentiality inquiry "ask[s] whether the reason for the narrowing amendment was peripheral . . . to the alleged equivalent." *Ajinomoto Co., Inc. v. Int'l Trade Comm'n*, 932 F.3d 1342, 1354 (Fed. Cir. 2019) (quoting *Festo Corp.*, 344 F.3d at 1369). In evaluating tangentiality, the Court must look to the "objectively apparent reason" for the amendment in the prosecution history. *Integrated Tech. Corp.*, 734 F.3d at 1358 (quoting *Festo Corp.*, 344 F.3d at 1369). "Prosecution history estoppel, including the tangentiality inquiry, is always a case-specific analysis. The objectively apparent reason discernable from the prosecution history record will, accordingly, differ in each case." *Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1366 (Fed. Cir. 2020). Here, the prosecution history shows that Apnea did more than distinguish lateral squeezing from biting force. It amended the claims to require deformation of the lower tray assembly, and it told the Examiner that Lindsay did not disclose a lower tray assembly that changed shape and deformed in response to lateral squeezing forces to release locking engagement with an upper tray assembly. Amendment at 14 (directing the Examiner to the

13

lower tray assembly in particular in stating that "there is nothing to indicate that a lower tray assembly of the repositioning device of Lindsay, et al. undergoes a change of shape"); *see also id.* at 15 ("In other words, despite being subjected to up and down biting forces, the shape of the mandibular repositioning device taught by Lindsay, et al. remains constant and does not appear to undergo a deformation before rails and grooves thereof are able to move out of their frictional interlocking engagement."). Both the lateral squeezing and the lower tray assembly amendments appear responsive to the Examiner's observation that "Lindsay discloses the user may manipulate the device . . . by <u>biting</u> the upper & lower trays, the application of biting on the trays <u>temporarily changes the shape [of the upper & lower trays]</u>, . . . thereby allowing movement of trays." PTO Action at 5 (emphasis added and citations omitted). Based on this prosecution history, the objectively apparent reason for the amendment was to distinguish both force direction and targeted tray structure. Apnea points to no other explanation in the record for its introduction of the narrowing lower tray limitation. *See Warner-Jenkinson Co.*, 520 U.S. at 33 ("Where no explanation is established, . . . the court should presume that the patent applicant had a substantial reason related to patentability for including the limiting element added by amendment."); *accord EMD Millipore Corp.*, 768 F.3d at 1204; *see also, e.g.*, *Paone*, 881 F. Supp. 2d at 421-22 (finding that prosecution history estoppel applied where "[t]here [wa]s no indication in the prosecution history as to why [plaintiff] would have added the [limiting] language were it not to secure the patent").

Apnea is correct that its remarks contrasted the claimed invention with Lindsay's "biting (i.e., up and down) force." Opp. at 9. But those remarks also repeatedly emphasized that the amended claims required the *lower* tray assembly to change shape and deform. Amendment at 14, 16. Apnea stated that its claimed appliance used "lateral compressive squeezing force . . . to temporarily change the shape of and deform a lower tray assembly before the position of the

14

lower tray assembly can be adjusted relative to the position of an upper tray assembly." *Id.* at 13. It further stated that Lindsay did not show or suggest "a lower tray assembly" that would "temporarily change its shape and experience deformation in response to squeezing forces applied to opposite sides thereof." *Id.* at 13, 15. It then summarized that Lindsay's trays were not repositioned by lateral squeezing "as is the lower tray assembly described and claimed by the applicants." *Id.* at 13. Those statements confirm what the claim language already shows: the lower tray limitation was part of the amended claim language and part of Apnea's explanation to the Examiner. The alleged equivalent, an upper tray assembly responsive to lateral compressive squeezing force, directly concerns the feature that Apnea limited to the lower tray assembly.

Apnea's argument that Lindsay did not disclose the exact alleged equivalent does not alter the Court's conclusion. Opp. at 11. As a threshold matter, as Fissiontech contends, "Apnea does not cite any portion of the prosecution history in which the Examiner made this finding or that otherwise establishes th[e] fact" that Lindsay did not disclose the equivalent alleged here. Reply at 2. Nor does Apnea point to evidence "that [the proposed equivalent] was not disclosed by any of the other references cited during prosecution." *Id.* To the contrary, the Examiner interpreted Lindsay as covering "the application of biting" force to the "upper & lower trays," thereby "temporarily chang[ing] the shape thereof" and "allowing movement of [the] trays." PTO Action at 5. But even if the Court were to assume that Lindsay does not suggest the proposed equivalent, Apnea's doctrine-of-equivalents argument would still fail.

The tangential relation exception is not established merely because the prior art did not contain the accused equivalent. *See Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1383 (Fed. Cir. 2005) ("[A]n amendment made to avoid prior art that contains the equivalent in question is not tangential. It does not follow, however, that equivalents not within the prior art must be tangential to the amendment." (internal quotation marks and citation omitted)); *accord Cross*

*Med. Prods., Inc.*, 480 F.3d at 1342-43; *see also Windbrella Prods. v. Taylor Made Golf Co.*, 414 F. Supp. 2d 305, 318 & n.90 (S.D.N.Y. 2006) (collecting cases and explaining that "the [Federal Circuit] has refused to find an amendment tangential even though the alleged equivalent did not exist in the prior art that had forced the amendment"), *opinion supplemented on reconsideration sub nom.*, *Windbrella Prods. Corp. v. Taylor Made Golf Co., Inc.*, 2006 WL 931698 (S.D.N.Y. Apr. 10, 2006). The question for the Court is whether the reason for the amendment was peripheral to the alleged equivalent. The reasons reflected in the prosecution history of the Asserted Patent included limiting the claimed force-responsive component to the lower tray assembly. That reason is directly related to Apnea's proposed equivalent.

It also does not matter that Apnea may have narrowed its claims more than necessary to overcome Lindsay. *See* Opp. at 9 (observing that "Apnea might not have needed to amend Claim 16 as severely as it did" to distinguish the Asserted Patent from Lindsay). "Prosecution history estoppel bars application of the doctrine of equivalents even where the applicant surrendered more claim scope than was necessary to overcome a rejection." *Energy Transp. Grp., Inc. v. William Demant Holding A/S*, 697 F.3d 1342, 1360 (Fed. Cir. 2012); *see also Norian Corp. v. Stryker Corp.*, 432 F.3d 1356, 1361-62 (Fed. Cir. 2005) ("[I]t frequently happens that patentees surrender more through amendment than may have been absolutely necessary to avoid particular prior art. In such cases, we have held the patentees to the scope of what they ultimately claim, and we have not allowed them to assert that claims should be interpreted as if they had surrendered only what they had to."); *see, e.g., Integrated Tech. Corp.*, 734 F.3d at 1358 ("It may be that [plaintiff] did not need to surrender a lack of physical contact between the probe tip and window in either state to overcome [the prior art]. The dispositive fact [in evaluating tangential relation] is that [plaintiff] chose to do so."); *Pharma Tech Sols., Inc.*, 942 F.3d at 1382 ("That the October 1997 amendment may have ceded more claim scope than

16

necessary to overcome prior art does not mean that the tangential relation exception applies here."); *Duramed Pharms., Inc. v. Paddock Lab'ys, Inc.*, 715 F. Supp. 2d 552, 565 (S.D.N.Y. 2010) ("Essentially, [plaintiff] argues that there was no reason for the amendment. However, even if this were true . . . silence in the record as to the reason for the amendment does not overcome the . . . presumption."), *aff'd*, 644 F.3d 1376 (Fed. Cir. 2011); *Int'l Rectifier Corp. v. IXYS Corp.*, 515 F.3d 1353, 1359 (Fed. Cir. 2008) ("[Plaintiff]'s decision to claim that structure using the limiting term 'adjoining,' whether or not *required* to overcome the rejection, cannot be described as only tangentially related to the equivalency of a structure with non-adjoining regions."); *Schwarz Pharma, Inc. v. Paddock Lab'ys, Inc.*, 504 F.3d 1371, 1377-78 (Fed. Cir. 2007) ("The fact that the inventors may have thought after the fact that they could have relied on other distinctions in order to defend their claims is irrelevant and speculative . . . . We cannot say in such a case that the amendment was no more than tangentially related to the equivalent at issue."); *Felix v. Am. Honda Motor Co., Inc.*, 562 F.3d 1167, 1184 (Fed. Cir. 2009) ("[Plaintiff] has identified no explanation in the prosecution history for the addition of the gasket limitation, and . . . therefore cannot meet his burden to show that the rationale for adding the gasket limitation was tangential to the presence and position of a gasket."); *Festo Corp.*, 344 F.3d at 1371-72 (finding, where plaintiff "argue[d] that the amendment was unnecessary," that lack of reason for amendment in prosecution history meant plaintiff "cannot satisfy the 'tangential' criterion").

The Federal Circuit's decision in *Biagro W. Sales, Inc. v. Grow More, Inc.* is instructive. There, the relevant claims, which recited buffered phosphorus fertilizers, were rejected over a prior art reference disclosing a fertilizer that was buffered only when diluted. 423 F.3d 1296, 1299 (Fed. Cir. 2005). Biagro amended the claims to add the limitation that the fertilizer must be concentrated — specifying a concentration range "of about 30 to about 40 weight percent." *Id.*

17

at 1305-06.  The equivalent at issue in *Biagro* contained phosphorus compounds at a concentration ranging from 59 to 62 percent.  *Id.* at 1305.  The question before the court was whether amendment-based prosecution history estoppel barred Biagro's doctrine-of-equivalents claim.  *Id.*  Biagro argued that it did not, "because only the lower limit of the claimed range was necessary to distinguish over prior art," thereby making Biagro's amendment rationale tangential to the alleged equivalent.  *Id.* at 1306.  The Federal Circuit disagreed.  It found that, as in this case, "it [wa]s clear from the prosecution history that the reason for adding the range limitation was to overcome [the] prior art."  *Id.*  The court further observed that "[i]n effect, Biagro," like Apnea here, "[wa]s arguing that there was no reason for adding an upper limit of 40%."  *Id.*  Because "the prosecution history show[ed] no [other] reason for adding an upper limit," the court concluded that Biagro could not "claim that the rationale for the amendment [wa]s merely tangential."  *Id.*  So too here.

For much the same reason, Apnea's reliance on *Eli Lilly & Co. v. Hospira, Inc.*, Opp. at 10, is misplaced.  In *Eli Lilly*, the prior art that triggered amendment disclosed treatments using methotrexate, a type of antifolate.  933 F.3d 1320, 1326 (Fed. Cir. 2019).  Plaintiff's amendment narrowed its claims from requiring "an antifolate" to requiring "pemetrexed disodium."  *Id.* at 136.  The equivalent at issue was pemetrexed ditromethamine, a different pemetrexed salt that was functionally identical to pemetrexed disodium.  *Id.* at 1326-27, 1336.  The Federal Circuit concluded that the amendment was tangentially related to the alleged equivalent because the prosecution history indicated that "[t]he reason for [plaintiff]'s amendment . . . was to narrow [the] original claim . . . to avoid [the prior art], which only disclose[d] treatments using methotrexate, a different antifolate."  *Id.* at 1331.  Thus, the court held, "the reason for the amendment was not to cede other, functionally identical, pemetrexed salts."  *Id.*

18

Unlike in *Eli Lilly*, the asserted equivalent here is not collateral to the reason for amendment. The amendment in *Eli Lilly* amounted to the narrowing of a general category to a specific subtype, and the alleged equivalent was a variant of the *selected* subtype. In contrast, Apnea's amendments narrowed its claims from covering both tray assemblies to only covering the lower tray assembly — an upper-tray equivalent therefore lies in the very territory that Apnea *surrendered*, rather than in an incidental area untouched by the amendment. *See also* Detailed Action at 4 (reflecting that lower tray limitation was a basis for allowance); Notice of Allowance at 9 (same).

At bottom, "[a] patentee must 'be held to what he declares during the prosecution of his patent,' because a contrary rule would undermine 'the public notice function of a patent.'" *Ajinomoto Co., Inc.*, 932 F.3d at 1351 (alteration adopted) (quoting *Springs Window Fashions LP v. Novo Indus., L.P.*, 323 F.3d 989, 995 (Fed. Cir. 2003)). Having amended the claims to recite a lower tray assembly responsive to lateral compressive squeezing force, Apnea may not now use the doctrine of equivalents to recapture a force-responsive upper tray assembly.

### B.    The Presumption of Surrender Applies to Claim 1 with Equal Force

This conclusion bears on both claim 1 and claim 15, despite original claim 1 containing the lower tray limitation *pre*-amendment. At oral argument, Apnea contended, for the first time, that any estoppel effect should be cabined to claim 15, as only original claim 16 was amended to eliminate the upper tray assembly from its scope. Tr. at 20:3-21:13. Of course, "an argument raised for the first time at oral argument is deemed forfeited." *Vera Punin v. Garland*, 108 F.4th 114, 129 n. 9 (2d Cir. 2024); *see also Quituizaca v. Garland*, 52 F.4th 103, 114 n.62 (2d Cir. 2022) ("[I]t is 'well established that arguments raised for the first time at oral argument are deemed waived.'" (internal quotation marks omitted) (quoting *Gao v. Barr*, 968 F.3d 137, 141 n.1 (2d Cir. 2020))). But even if this argument were not waived, it would still fail. The estoppel

inquiry is not limited "to the amendment of a particular claim, but [is] instead tailor[ed] . . . to the scope of the claims of the patent as a whole, pre- and post-amendment." *Colibri Heart Valve LLC v. Medtronic CoreValve, LLC*, 143 F.4th 1367, 1379 (Fed. Cir. 2025); *see also id.* at 1381 ("When evaluating prosecution history estoppel, we do not address each claim in isolation, considering only whether that asserted claim was amended."). Relevant here, "th[e] presumption [of surrender] applies to all claims containing the [added] [l]imitation, regardless of whether the claim was, or was not, amended during prosecution." *Deering*, 347 F.3d at 1326; *accord Paone*, 881 F. Supp. 2d at 423. Thus, claim 15's prosecution history limits the scope of claim 1, which shares the same lower tray limitation. The two claims fall together.

## C.    The Other Exceptions to the Presumption of Surrender Do Not Apply

In addition to the tangential relation exception, a plaintiff may invoke two other exceptions to amendment-based prosecution history estoppel: "(1) 'the alleged equivalent would have been unforeseeable at the time . . . the narrowing amendment' was made" and "(2) . . . 'there was some other reason suggesting that the patentee could not reasonably have been expected to have described the alleged equivalent.'" *Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1140 (Fed. Cir. 2004) (internal quotation marks omitted) (quoting *Festo Corp.*, 344 F.3d at 1368). Apnea does not meaningfully invoke either of these other exceptions, and neither applies on this record. First, the alleged equivalent was foreseeable. Original claim 16 expressly recited that "one of said upper and lower tray assemblies" could be responsive to force. '383 Application at 25. That language demonstrates that upper tray force responsiveness was not unforeseeable at the time of amendment. It was contemplated by the Application itself.

Second, Apnea could reasonably have described the alleged equivalent. Again, the original claim language demonstrates that Apnea knew how to claim an appliance in which either

20

the upper or lower tray assembly was force responsive. *Id.* Apnea chose not to maintain that scope, instead amending the claims to specify the lower tray assembly. Amendment at 9. Apnea therefore cannot show that it lacked language or ability to describe the alleged equivalent. Indeed, Apnea identifies no reason why it could not reasonably have been expected to claim the accused equivalent. It instead invokes only the tangential relation exception, arguing that the amendment should be understood as directed only to the distinction between lateral squeezing and biting. But, for the reasons already explained in Part I.A *supra*, the prosecution history does not support that narrow view.

## II.  Argument-Based Estoppel Is Unnecessary to Resolve the Motion

Because amendment-based estoppel is sufficient to resolve the motion, the Court need not consider whether argument-based estoppel additionally bars Apnea's theory.

## III.  Count II Fails with Count I

Count II asserts indirect infringement. Compl. ¶¶ 32-37. "[T]here can be no indirect infringement without direct infringement." *Mitek Sys., Inc. v. United Servs. Auto. Ass'n*, 139 F.4th 1340, 1356 (Fed. Cir. 2025) (quoting *Limelight Networks, Inc. v. Akamai Techs.*, Inc., 572 U.S. 915, 920 (2014)); *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1272 (Fed. Cir. 2004) ("Indirect infringement, whether inducement to infringe or contributory infringement, can only arise in the presence of direct infringement[.]"); *Ottah v. Bracewell LLP*, No. 21-cv-00455 (KPF), 2021 WL 5910065, at *10 (S.D.N.Y. Dec. 10, 2021) ("Direct infringement is a necessary predicate for a finding of induced infringement in the usual patent infringement case." (alteration adopted and citation omitted)), *aff'd*, No. 2022-1876, 2022 WL 16754378 (Fed. Cir. Nov. 8, 2022). Because Apnea's only pleaded direct-infringement theory depends on a barred application of the doctrine of equivalents, Apnea has not plausibly pleaded

an underlying act of direct infringement of the asserted claims. Count II therefore fails along with Count I.

## CONCLUSION

Fissiontech's motion to dismiss Counts I and II is GRANTED. Apnea's false advertising claim and New York General Business Law claims, Counts III and IV, are not challenged by this motion and remain pending. Given the Court's dismissal of the patent claims and the consequent modification of the case's procedural posture, the parties are directed to confer and submit an amended Case Management Plan and Scheduling Order by **June 17, 2026**.

The Clerk of Court is respectfully directed to terminate the motion at Dkt. 24.

Dated: June 3, 2026
        New York, New York

SO ORDERED.

_____
JENNIFER L. ROCHON
United States District Judge